**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HIRAM MOISES MARTINEZ MARCANO,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-1389-J** |
| **JOSHUA JOHNSON, et al.,** | ) | |
| **Respondents.**[1] | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Hiram Moises Martinez Marcano, a noncitizen,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge Bernard M. Jones, II referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 8, and Petitioner has replied, Doc. 9. So the matter is at issue.

---

[1] Warden Fred Figueroa is not a federal official, and the Government did not file a response on his behalf. Doc. 8, at 1 n.1.

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition and either order his immediate release subject to the same conditions that governed his earlier parole or order Respondents to provide him with an individualized bond hearing within seven days or else release Petitioner.

**I. Factual background and Petitioner's claims.**

Petitioner is a citizen of Venezuela. Doc. 8, at 1. On May 14, 2021, he arrived near Del Rio, Texas, and United States Customs and Border Protection officers detained him. Doc. 1, at 2; Doc. 8, at 2. The Department of Homeland Security (DHS) processed Petitioner "as an [expedited removal] with credible fear," and issued him an Interim Notice Authorizing Parole. Doc. 8, Ex. 2, at 2; Doc. 1, Ex. 1. DHS noted his parole authorization was valid one year from July 13, 2021. Doc. 1, Ex. 1. On September 17, 2021, Petitioner applied for Asylum and Withholding of Removal. Doc. 1, Ex. 2. He obtained employment authorization and a Social Security card and states he was a law-abiding and productive member of society. Doc. 1, at 2. He also applied for and received Temporary Protected Status from June 15, 2024, through April 2, 2025. *Id.* Ex. 3. He states he is married to a U.S. citizen and is eligible for an Adjustment of Status. Doc. 1, at 2. During his U.S. Citizenship & Immigration Services (USCIS) marriage interview on May 28, 2026, Immigration and Customs

Enforcement (ICE) detained him after serving him with a warrant for arrest and a Notice to Appear (NTA) charging him as removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA).[4] Doc. 1, at 3; Doc. 8, Ex. 1.

Petitioner claims that since his release, he has appeared for all of his scheduled check-ins and engaged in no unlawful activity. Doc. 1, at 2-3. He also states he received no pre-deprivation hearing, and that ICE neither showed him a warrant for his arrest, nor identified any changed circumstances or newly discovered security concerns when arresting him. *Id.* at 3.

Petitioner argues that his re-detention without process violated (1) the Administrative Procedure Act; (2) the INA; (3) his right to due process; and (4) Respondents' own rules, statutes, and regulations. *Id.* at 9-12.

He asks this Court to order Respondents not to transfer him outside this district while this habeas petition is pending; issue an order requiring Respondents to show cause why this Petition should not be granted within

---

[4] This section is codified at 8 U.S.C. § 1182(a)(6)(A)(i) and provides that a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General is ineligible to be admitted to the United States. *Id.* § 1182(a)(6)(A)(i).

three days[5]; declare his detention is unlawful; order his immediate release; and award him attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and on any other basis justified under law. *Id.* at 12.

## II. Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III. Discussion.

### A. The Court has jurisdiction to consider Petitioner's claims.

Petitioner presented himself at a port of entry and was released on humanitarian parole. Doc. 1, at 2; Doc. 8, at 1. Respondents contend they are

---

[5] The Court addressed these requests in its Order for Response, Doc. 6.

properly detaining Petitioner under 8 U.S.C. § 1225(b)(1) and that the Court has no jurisdiction to review the discretionary decision to re-detain Petitioner during the pendency of his removal proceedings. *See* Doc. 8, at 9 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)). The Court should disagree.

Petitioner does not challenge a discretionary decision to terminate his parole. He instead argues he was arbitrarily detained in violation of his due process rights and the regulations governing his parole. Doc. 1, at 10-12. So the Court has jurisdiction to consider Petitioner's claims. *See Ghamoushi-Ramandi v. Janecka*, 2026 WL 1107385, at *3 (C.D. Cal. Apr. 20, 2026) ("Respondents argue Section[] . . . 1252(a)(2)(B)(ii) strip[s] the Court of jurisdiction to review Petitioner's custody determination and bond orders. However, [the petitioner's] claims are constitutional in nature and do not challenge actions that fall within the discretion of the Attorney General or the Secretary of Homeland Security. The first and second claims raise due process and regulatory challenges to the procedures Respondents afforded Petitioner when they re-detained him.") (alteration omitted) (internal citations and quotation marks omitted); *cf. Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) ("[T]o the extent Mr. Mwangi challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.").

### B. Petitioner is not subject to mandatory detention under § 1225(b)(1).

Petitioner claims that his ongoing detention without a custody review violates his due process rights and the INA. Doc. 1, at 10-12. To the extent that Respondents substantively address Petitioner's statutory and procedural due process arguments, they assert that Petitioner is properly detained under 8 U.S.C. § 1225(b)(1) as an arriving alien at a port of entry. Doc. 8, at 8-9. "[B]ecause the legality of Petitioner's continued detention depends upon the source of the Government's detention authority, the Court must determine whether § 1225(b)(1) or [8 U.S.C.] § 1226(a) governs before it can resolve Petitioner's due process claim." *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *2 (W.D. Okla. June 29, 2026).

Under § 1225(b)(1)(A)(i), "[i]f an immigration officer determines that [the noncitizen] . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) . . ., the officer shall order the [noncitizen] removed from the United States without further hearing or review unless the [noncitizen] indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). An individual detained as inadmissible upon inspection at the border can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'"

*Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 U.S.C. § 1182(d)(5)(A) (granting discretion to DHS officials to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States").

The parties appear to agree that Petitioner was temporarily paroled under § 1182(d)(5)(A) after arriving at the border. *See* Doc. 1, at 2 & Ex. 1; Doc. 8, at 1. His removal proceedings are ongoing, but Respondents re-detained him in May 2026. Doc. 8, Exs. 1, 2.

Petitioner argues there was no reason to re-detain him and ICE violated its own regulations and his due process rights when it arbitrarily revoked his parole. Doc. 1, at 3, 6-8, 11-12. Respondents argue Petitioner's mandatory detention under § 1225(b)(1) does not implicate any due process rights because upon the NTA's revocation of his parole, he was subject to mandatory detention under § 1225 as an applicant for admission. Doc. 8, at 9.[6] The Court should

[6] Respondents do not state that Petitioner's parole automatically expired. Rather, they claim they "revoked" it by issuing him an NTA on May 28, 2026. Doc. 8, at 7.

agree with Petitioner that § 1225(b)(1)'s mandatory detention provision does not apply to him.

The "termination of humanitarian parole did not automatically return [Petitioner] to mandatory detention under [] § 1225(b)(1)." *Horta Valdovinos v. Warden, Cimarron Corr. Facility*, No. CIV-26-924-J, 2026 WL 2200432, at *2 (W.D. Okla. July 30, 2026) (citing *Kumar v. Johnson*, No. CIV-26-352-J, 2026 WL 937560, at *2 (W.D. Okla. Apr. 7, 2026)); *see also Rafibaev v. Noem*, 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026) (finding it was "illogical to suggest that [the petitioner's] re-detention [after termination of humanitarian parole was] governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled.").

**C. Section 1226(a) governs Petitioner's detention.**

Petitioner's current detention "is not part of the inspection process," and it did not "arise from an attempted entry at a port of entry." *Zhakhonov*, 2026 WL 1865418, at *3. Rather, like the petitioner in *Zhakhonov*, "Petitioner was paroled into the United States, permitted to reside in the interior of the country for several years, pursued his asylum application, and complied with the conditions of his release before being re-detained" during a marriage interview with his wife. *Id.* "Under those circumstances, Petitioner's detention is more

naturally characterized as detention 'pending a decision on whether the alien is to be removed from the United States' within the meaning of § 1226(a)." *Id.* So the Court should conclude that Petitioner's present detention "is governed by § 1226(a), not § 1225(b)(1)." *Id.*

**D. Petitioner is at least entitled to a bond hearing.**

"Unlike § 1225(b)(1), § 1226(a) contemplates individualized custody determinations and authorizes release on bond or conditional parole pending completion of removal proceedings." *Id.* The parties agree that the Government has not provided Petitioner with an individualized custody determination under § 1226(a) since his re-detention. *See id.* ("[T]he process afforded by § 1226(a) itself serves as the mechanism through which a detainee's liberty interest is protected."). Because this is "the very process Congress prescribed for detainees held pursuant to § 1226(a)," the Court should at least order Respondents to provide Petitioner with a bond hearing under § 1226(a). *Id.*; *cf.* *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026) ("We hold that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A).").

**E. Petitioner was entitled to due process before the Government revoked his parole.**

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)). Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025).

When the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 265, 268 (1954). Pertinent here, "[t]he statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to detainees." *Villanueva*, 801 F. Supp. 3d at 698-99.

### 1. Statutory and regulatory framework.

Upon inspection at the time of his request for admission through a port of entry, Petitioner was first detained and then "paroled" into the United States under § 1182(d)(5). Doc. 8, at 1-2. Section 1182(d)(5) grants discretion to DHS officials to "parole into the United States temporarily under such conditions as [they] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Any revocation of this parole must be based on a decision by a DHS official that either "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating the DHS Secretary may revoke parole "when the purposes of such parole . . . have been served"). And the parole will be terminated only when "written notice" of this decision is served on the noncitizen. 8 C.F.R. § 212.5(e)(2)(i).

### 2. Respondents did not comply with the applicable regulations before revoking Petitioner's parole.

Respondents state that Petitioner's conditional parole was not arbitrarily revoked but revoked through the issuance of the NTA on May 28,

2026. Doc. 8, at 8-9 ("Petitioner's parole was revoked by the issuance of the NTA."). They argue that ICE can terminate parole at any time for any reason. *Id.* (citing Doc. 1, Ex. 1.). Although service of a charging document may constitute written notice of termination, Respondents have not shown that an authorized official made the predicate determination required by § 212.5(e)(2)(i). And this lack of an individualized determination violated the regulations governing the termination of parole. *See, e.g.*, *E-D-S-O- v. Hernandez*, 2026 WL 1067036, at *4 (W.D. Wash. Apr. 20, 2026) ("Nothing in the record shows Respondents provided Petitioner with written notice of revocation of his humanitarian parole, that the original purpose of his parole was accomplished, or that a DHS official with authority determined 'neither humanitarian reasons nor public benefit' warranted continued parole."); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 418 (S.D.N.Y. 2025) ("Respondents provide no indication that an individualized determination was made as to the revocation of Munoz Materano's parole; nor do they articulate, even now, either that the purpose for which Munoz Materano's parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States."); *see also* *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137-38 (D. Or. 2025) ("This is a grant of discretionary authority, but it has a mandatory requirement—parole

may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

### 3. Respondents violated Petitioner's due process rights by summarily revoking his parole.

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals

released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of his protected liberty interest when they re-detained him.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending over five years on parole. By initially releasing Petitioner on parole, the Government necessarily determined that he was "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Respondents have presented no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for five years, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains

"subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in continued liberty grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. And "Petitioner's liberty interest does not evaporate when a term of parole expires." *Juan Carlos V.B. v. Chestnut*, 2026 WL 1224238, at *2 (E.D. Cal. May 5, 2026); *see also Begaliev v. Warden of Otero Cnty. Processing Ctr.*, 2026 WL 837109, at *5 (D.N.M. Mar. 26, 2026) (finding a similarly situated petitioner "had a sufficient liberty interest created by the regulations"). The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where ICE arrested him at his USCIS interview without any notice, beyond service of the NTA, of the reason or a pre-deprivation hearing.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his release was justified. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the [G]overnment's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing

the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). This is particularly so because the Government did not consider detention necessary during Petitioner's nearly five years at liberty.

**F. Remedy.**

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release.") (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990)).

The undersigned finds that ICE violated Petitioner's due process rights when it summarily revoked his parole. Based on these findings, the undersigned recommends the Court grant the habeas corpus petition and order Respondents to release Petitioner from detention subject to the same conditions of his earlier parole.

Should the Court determine a bond hearing is the appropriate remedy, it should order Respondents to provide Petitioner with an individualized bond hearing within seven days or else release Petitioner. *See, e.g.*, *Santillan Quiroz*, 180 F.4th at 1251 n.13 ("Because Santillan Quiroz can properly be subject to detention under § 1226(a), though, the district court shall order the Government to, within seven days of such order, either provide him with a bond hearing or else release him."). The undersigned also recommends that, given Petitioner's detention under the wrong statute, the Court should find that it is more appropriate for the Government to bear the burden of proof in this context. *See, e.g., Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *3 (W.D. Okla. May 26, 2026) (placing burden of proof on Government at the bond hearing to "justify Petitioner's continued detention by clear and convincing evidence" after it waived review of the issue); *see also Garcia Cortes v. Noem*, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (placing the burden of proof on the Government to justify the petitioner's

continued detention (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). Having released Petitioner previously, the Government ought to now bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight such that he should remain in detention. *See L.G.*, 744 F. Supp. 3d at 1186 ("In general, the Supreme Court has held that the clear and convincing standard applies to civil detention where liberty is at stake." (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979))).

## IV. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition and **either order his immediate release subject to the same conditions that governed his earlier parole or order Respondents to provide him an individualized bond hearing within seven days or else release Petitioner. The undersigned also recommends that the Court order the Government to certify compliance by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to Counsel for the Warden of the Diamondback Correctional Facility. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the Government

bears the burden of proving, by clear and convincing evidence that Petitioner presents a flight risk and a danger to the community.[7]

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by August 20, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[8] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[7] As to Petitioner's request for EAJA fees, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B).

[8] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

**ENTERED** this 13th day of August, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE